**HENJES MARINE, Inc. v. UNITED STATES.**

**THE BARBARA HENJES.**

A. 17695.

United States District Court
E. D. New York.

May 17, 1948.

Purdy & Lamb, of New York City (Edmund F. Lamb, of New York City, of counsel), for libelant.

J. Vincent Keogh, U. S. Atty., of Brookly (Burlingham, Veeder, Clark & Hupper, of New York City, Adrian J. O'Kane, of New York City, of counsel); for respondent.

KENNEDY, District Judge.

Libelant sues respondent on in rem principles, to recover for damage sustained by the tug Barbara Henjes[1] resulting as it is claimed, from the fault of the liberty ship John A. Quitman,[2] while the latter was being docked at Tiffany Street Pier in the Bronx on May 22, 1945, at about 7:00 P.M. war time. Tiffany Street Pier is just west of Barretto Point. It juts out into the stream in a southwesterly direction from the Bronx shore (209° true). Its sides are 543 feet long from bulkhead to pier head, and the pier face is 52 feet wide.

On May 22, 1945, toward evening, John A. Quitman, with the steam tug Helen Mathiasen[3] hanging on her port bow, was on a northerly course headed for the pier where she was to dock. She turned to starboard with North Brother Island on her starboard hand, and took up almost an easterly course until she had arrived at a point to the eastward of the pier. She then rounded to on left rudder, and made a turn of practically 180° so that the wind, which was from southwest (27 miles per hour), and the tide (5 hours after low water), were on her port bow. She then turned on right rudder after she had reached a point westward of the pier.

Meanwhile Barbara Henjes, which had been lying along the westerly side of Tiffany Street Pier, cast off her lines and took station on the starboard bow of John A. Quitman under the direction of a docking pilot on board of that vessel. John A. Quitman was using her own engines under the direction of this pilot, and there was in force between his employer and respondent United States of America a contract embodying the so-called pilotage clause. Cf. Sun Oil Co. v. Dalzell Towing Co., 1932, 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311.

What followed is matter of sharp dispute. Henjes seems to claim that John A. Quitman approached the pier face at too sharp an angle; but the testimony on the part of the ship is that she was lined up almost at right angles to the pier face as she approached the westerly side of the pier. It will be seen, on either version, that wind and tide were setting the ship in practically a northeasterly direction

---

[1] Barbara Henjes is a diesel tug 82.2 feet long between perpendiculars, 20.6 feet beam, and 10.5 feet depth. Her overall length is 86 feet and her overall beam 22.6 feet. She is equipped with four-cylinder Cooper-Bessemer diesel engines generating 600 horsepower.

[2] John A. Quitman is a liberty ship 441 feet 6 inches length overall, 416 feet between perpendiculars, 56 feet 10¾ inches beam, and 37 feet 4 inches moulded depth. She was light on May 22, 1945, and her draft was then 8 feet 3 inches forward and 17 feet 7 inches aft.

[3] Helen Mathiasen develops 360 horsepower. She is 104.2 feet long between perpendiculars, 20 feet beam, and 10.6 feet depth.

down towards the pier, but it will be remembered that she made her approach from a point to the westward of the pier. Henjes claims that as the maneuver progressed, she saw she was in a position of great danger, and several times called out to the docking pilot; John A. Quitman claims that the pilot ordered Henjes to the starboard quarter for the purpose of holding the stern up against wind and tide, and that actually by remaining on the starboard bow and pushing, Henjes was hampering the docking maneuver, since she was accelerating the pivoting effect of both wind and tide. In fact, it is claimed on behalf of Quitman that Henjes responded to the order and agreed to change station, but did not do so.

At any rate the time arrived when Henjes was crushed between the starboard side of Quitman and either the corner or face of the dock.

The evidence is in hopeless and irreconcilable conflict on two vital points: (1) Whether Henjes was ordered to change her station to the starboard quarter of Quitman, or whether on the other hand she remained at the starboard bow under protest, and (2) whether Henjes was crushed against the corner of the dock, or against the face of it, because John A. Quitman sagged down as the result of a negligent approach to the berthing space.

I am thrown back, as usual, upon what the probabilties are. It seems to me most unlikely that any competent docking pilot, under the circumstances, would compel a tug to remain at the starboard bow of the ship being docked. The position is not only dangerous, but utterly useless. Obviously, the danger and the foolishness of the position occupied by Henjes would become greater as the angle between the starboard side of John A. Quitman and the face of the dock becomes more acute. Moreover, it is undenied that John A. Quitman was safely docked by Helen Mathiasen alone after Henjes was crushed, and was thus rendered useless. Under the hypothesis of Quitman's position (angle of approach) advanced by Henjes, it is quite unlikely that this could have been done.

On the whole record, therefore, I am compelled to find that the version of the orders given by John A. Quitman is accurate, namely, that the docking pilot ordered Henjes to quit her station at the starboard bow and take station at the starboard quarter. I reject the claim of Henjes that she begged for permission to make this very maneuver, and was compelled to continue in a highly hazardous position. Exactly where, with respect to the face of the dock, Henjes was situated when she was crushed, it is not easy to say. Indeed, I think she herself is in doubt about this, because at the trial it seemed to me that she advanced two theories about it. But on the whole I am inclined to think that she was crushed between Quitman's starboard side and the southwest corner of the dock. At or about this time Helen Mathiasen would, no doubt, have been pushing Quitman's bow in toward the dock, and this would have a tendency ultimately to widen the angle between Quitman's starboard side aft and the westerly side of the dock, which, of course, would allow Henjes under starboard stern way, accelerated by the tidal current, to drop back with her starboard side to the face of the dock, a position at which she concededly arrived at some point.

On these facts, I must apply the familiar standard of conduct applicable to tugs engaged in a docking operation. They assume the ordinary risks of the venture. They are under a duty not only to use due care but to possess the requisite skill and experience to enable them not only to facilitate docking and undocking but to do it safely for themselves as well as for the ship to which they are bound by contract. Of course, the ship on the other hand is under a duty not to subject a tug to extraordinary risk. If my estimate of the facts of the situation is correct, Henjes subjected herself to extraordinary risk. The docking operation was conducted in a normal acceptable manner and there seems not to be the slightest excuse for the conduct of Henjes, except possibly the comparative inexperience of her master.

Respondent is entitled to a decree dismissing the libel with costs. I have filed findings of fact and conclusions of law.